## CAWLEY, EXECUTOR OF REEVE, v. REEVE.

On demurrer, in assumpsit.

A count against an executor as such, for money paid by plaintiff since the testator's death, on a bond in which he was testator's surety: and charging the executor with such payment to his use as executor, and with his promise to repay, &c. is a count on which a judgment de bonis testatoris, may be rendered: and which may be joined with counts for promises made by testator in his life time.

Counts may be joined, where the fund out of which the damages are to be applied, is the same.

*Jeffers* for plaintiff.

*Eakin* for defendant.

Mr. JEFFERS. This a demurrer to the 6th and 7th counts of the declaration. The counts are "for money paid after the death of the testator, to *the use* of the defendant *as executor, &c.*"

The following authorities support these counts. 7 *Barn. & Cress.* 444; 7 *Taun.* 580; 3 *East,* 104; 6 *East,* 405; 10 *East,* 313; 6 *John. Rep.* 112; 8 *John.* 440; 1 *Moore,* 305; 1 *H. Black.* 102; 2 *Saun.* 117, *a;* 12 *Sergt. and Rawl.* 13; 13 *Sergt. and Rawl.* 434.

HORNBLOWER, C. J. The first four counts are upon promises, made by the testator in his life time. The fifth is on a promise, made by the defendant *as executor,* in consideration of the indebtedness of the testator in his life time, to the plaintiff.— These counts are admitted to be good, and consistent with each other. The 6th and 7th counts, are upon promises of the defendant *as executor,* in consideration of money paid by the plaintiff, for the defendant *as executor,* since the death of the testator. To these, there is a general demurrer: and it is objected that they are improperly joined with the first five counts. Upon the subject of joinder of counts, in actions by and against executors and administrators, there is certainly much confusion in the books. At least, in my opinion, the cases cannot all be reconciled to each other upon principle. The case of *Sibbits* v. *Lloyd et al. administrators, &c.* 6 *Halst.* 163, was cited, and much relied on by the defendant's counsel: but the question presented

by this demurrer, was not directly before the court in that case; and therefore it cannot be considered as authoritatively ruling the point now before us. It was conceded in that case, (whether properly or not, is immaterial) that the defendants therein charged, were only personally liable: and the court assuming that to be so, proceeded to consider the propriety of rendering judgment *de bonis propriis*, upon a declaration framed as that was. It was admitted, however, by Chief Justice Ewing, in the course of his argument, in that case, that whenever the recovery, would be a direct charge upon the estate of the deceased, the executor may be sued in his representative capacity.

The question then is, whether upon the counts demurred to, a judgment *de bonis testatoris*, would be the lawful and appropriate judgment?

In *Ashby* v. *Ashby et al. executors, &c.* 7 *B. & C.* 444, *in* 14 *Cond. R.* 77, the declaration contained three counts. 1st. For money paid, &c. for the use of defendants, *as executors*. 2d. For money had and received by defendants, *as executors*, to and for the use of the plaintiff. And the 3d. On an account stated between plaintiff and defendants, *as executors* of and concerning money due from them *as executors*, to the plaintiff. Upon demurrer, judgment was given for the defendant. But Lord Tenterden, C. J. said, " if the matter was quite new, I am not sure, it might not be as well to hold that the plaintiff might elect, to treat the receipt of the money, as done by the defendant, in his character of executor, and take his chance whether he would be paid out of the assets or not "—in which case, he adds, " the plaintiff must shew, that the money came into the defendant's hands, *because* he was executor." His Lordship concludes, by remarking " as to the first count (which is like the one in this case) for money paid, &c. to the use of the defendants, *as executors*, that although there might be some doubt," the strong inclination " of his mind was that it was good; that the defendant might plead *plene administravit*, and that the judgment should be *de bonis testatoris*."

Bailey, Justice, said, he could not get over the authorities—but for them, he should have thought all the counts good, and rightly framed. That there might be cases in which the creditor might have his election to sue the defendant, either in his personal or representative character. "In the first count," he

says, " the money is stated to have been paid by the plaintiff to the use of the defendants, *as executors* : that imports, that the plaintiff paid it, not on the personal account of the defendants, but *because they were executors*, and in release of something which otherwise would have been a burden on the assets of the testator." " I think," he says, " that the plaintiff having paid the money to the use of defendants, *as executors*, has the same right that, before such payment, belonged to the person to whom it was paid ; and consequently may charge the assets of the testator "— and I think so too, provided the plaintiff was not a mere volunteer, but was legally bound for the payment of the debt. Mr. Justice Bailey, then puts the case of two persons bound as sureties—one dies and the survivor has to pay the whole debt ; or, he might have put a case like the present ; one bound as security for another, the principal died, and the security has to pay the money. In either case, if the co-obligor had been living, the security paying the money, might have sued him ; and why not, in case of his death, sue his executor for money paid to his use, as executor. Surely, *ex equo et bono*, the surety, in such case,. would be entitled to be paid out of the assets of the principal.— The executor in his own estate, may be insolvent ; as executor he may have funds. Why, in such case, drive the creditor into a court of equity, when there are funds under the control of the court, to which in equity and good conscience, the plaintiff is entitled.

That a count, upon an account stated between the plaintiff and the defendants, *as executors*, of and concerning moneys before then due and owing *from the defendants as executors*, is a good count, and may be joined with counts on debts due from, and promises made by the testator, seems now to be admitted. *See Powell* v. *Graham*, 7 *Taunt.* 580 ; *Ashby* v. *Ashby et al. executors*, 7 *B. & C.* 444 ; although it was formerly held otherwise, as in *Ross* v. *Bowler*, 1 *H. Bl. R.* 108 ; 2 *Saund.* 117, *b. note* 2.

But a promise made by an executor to pay the plaintiff money found due to him upon an accounting between the plaintiff *and the executor*, of and concerning moneys due the plaintiff *from the defendant as executor*, is no more a promise to pay money which *the testator* owed to the plaintiff, than is a promise made by the executor to pay the plaintiff money which the plaintiff had paid

*for the use of the defendant as executor,* or to pay money which the defendant had received *as executor,* for the use of the plaintiff.

In *Ord* v. *Fenwick,* 3 *East,* 104, in the 2d count, the plaintiff declared, for that the defendant was indebted to her, *as executrix,* in divers sums of money, by her *as executrix* paid, laid out and expended, &c. and being so indebted, the defendant in consideration thereof, promised the plaintiff to pay her *as executrix* &c. The first count was upon a promise made to the plaintiff's testator, and upon an objection that there was a misjoinder of counts, Lord Ellenborough and the whole court, upon a writ of error, held that if they could suppose a case where the money must have been paid by the plaintiff below *as executrix,* and for which she must entitle herself to recover *as such,* they must support the judgment: they then say that if she had been sued on the obligation of her testator, given as security for the defendant whose debt she *as executrix* had been obliged to pay, the law would raise an implied promise by the defendant, to her *as executrix,* to repay the money; and the judgment was affirmed. Now I put the question : If the plantiff, as security for the testator, has been compelled to pay a debt, due from him since his death, and which his *executor* ought to have paid out of his estate, why will not the law, equally, as in the former case, imply a promise, by *the executor as such,* to refund the money to the plaintiff, out of the testator's assets? I am at a loss for an answer.

In the language of Chief Justice Best, in *A' Court* v. *Cross,* 3 *Bingh. R.* 329, when by distinctions, and refinements, which as Lord Mansfield says, the common sense of mankind cannot keep pace with, any branch of the law is brought into a state of uncertainty, the evil is only to be remedied by going back to the statute ; or if it be in the common law, by settling it upon some broad and intelligible principles ; and it does seem to me impossible to reconcile the cases, or ever to arrive at any certainty, if we rely upon the books ; and that we ought therefore to settle this case upon principle, so as to constitute one uniform rule of action in future.

In *Cowel and ux. adm. &c.* v. *Watts,* 6 *East,* 405, Lord Ellenborough remarks, " It is certainly a more convenient rule to say that counts may be joined, where the fund out of which the damages are to come, or to which they are to be applied, is the same."

But on this point he admits the decisions have not been uniform. Why not adopt the rule here suggested ? If applied to the case under consideration, it would avoid all difficulty—all the counts in this declaration charge the defendant *as executor*, they all make a demand on the assets of the testator ? And if the money was paid by the plaintiff in discharge of a burden upon the estate of the testator, it ought upon every principle of law and justice, to be repaid out of those assets.

In the case of *Ashby* v. *Ashby*, 7 *B. and C.* 444, the great doubt was upon the count for money had and received, by the defendants *as executors*, to the use of the plaintiff. Littledale, Justice, thought such a count would not warrant a judgment *de bonis testatoris*, because it never was the debt of the testator.— That if the money received by the executor, though received in his representative character, belonged to the plaintiff, it instantly became a personal debt due from the executor to the plaintiff, and never became any part of the assets, or had any thing to do with the accounts of the testator. However just the reasoning of the judge was in that case, it is different from the one now before the court. The debt paid by the plaintiff, was the debt of the testator : it was a charge upon his estate. It never was, it is true, a debt due from the testator to the plaintiff, but it was a debt due from *his estate* to the original creditor :—and the moment the plaintiff paid the money it became due to him. It was a debt for which the executor might have been sued *as such* by the original creditor; and the plaintiff having been compelled to pay it, ought to be reimbursed out of the same fund that was originally chargeable with the debt. I see, therefore, no valid objection to the counts demurred to ; on the contrary, it would be unreasonable to turn the plaintiff round upon the personal responsibility of the executor, who may be insolvent and unable to pay out of his private estate. In my opinion, the demurrer ought to be overruled, with costs.

FORD, J. Reeve having been security for Cawley's testator, in a bond, and having given evidence that he had paid it off, recovered the amount of it against Cawley the executor, on a count for money paid *to the use of the testator in his lifetime.* The evidence was that the payment had all (except a trifling part for

interest) been made *since the testator's decease;* this did not main-tain the count for payment in the testator's lifetime, and the ver-dict was set aside. Then the plaintiff amended his declaration, by leave of the court, and inserted a count for money paid by him as surety for a debt of the testator, *after his death,* to the use of Cawley the executor, *as executor;* in consideration whereof, Cawley the executor, *as executor,* promised to pay, &c.

To this amended declaration, the defendant demurs for mis-joinder of cause of action ; the count on the indebtedness of the testator in his lifetime, requiring as the demurrer supposes, judgment *de bonis testatoris,* and that on the indebtedness of Cawley personally, requiring a judgment *de bonis propriis.*

It is fully settled that a count for money *lent to the executor,* or paid for *his* use, or goods *sold to him,* or work done *for him,* though alleged to be to or for him *" as executor,"* shews a con-tract since the testator's death, made by the executor himself personally ; and the judgment to be rendered on it, must be against his own goods, not those of the testator. In *Rose* v. *Bow-ler* and *another, executors of Bowler,* 1 *Hen. Bl.* 108, the counts were for money had and received, not by the testator, but *by them* " as executors ;" and money *lent to them* " as executors." Heath, J. " These counts make the executors liable personally only." Judgment could not be rendered on those counts against the goods of the testator. But if the testator in his lifetime, had contracted the debt, as for goods sold *to him,* or money bor-rowed *by him,* or paid at *his* request, or the like ; these being his own acts, they would warrant a judgment to bind his estate ; and if, after his death, the executor promise to pay such debts of the *testator's* contracting, it warrants a like judgment ; for the ex-ecutor promises to pay the *testator's old debt ;* he does not con-tract a new one. Thus in *Secar* v. *Atkinson, administrator of Atkinson,* 1 *Hen. Bl.* 102, on a count for goods sold to the in-testate in his lifetime ; in consideration whereof, after his death, the administrator promised to pay, &c., it was argued that the promise made by the administrator, rendered him personally liable for the debt ; and that the judgment on this count, must be personally against him and his proper goods, not against the goods of the intestate. But the court, (Heath, J. said,) " this is the common mode of declaring against executors and adminis-

trators, to save the statute of limitations; it is not true that the judgment on it, must be *de bonis propriis*. If it were to be considered as making the administrator *personally* liable, I do not know who would ever take out administration." The law as thus stated, was afterwards clearly admitted by the court, Spencer J. in *Whitaker* v. *Whitaker, executor*, 6 *Johns.* 112; and afterwards in *Carter* v. *Phelps, administrator*, 8 *Johns.* 440. A count on the indebtedness of the *testator*, cannot be united in the same action, with one on the indebtedness of the *executor*, because they require different judgments. Thus in *Jennings* v. *Newman, administrator*, 4 *Ter. Rep.* 347; the first four counts charged that the *intestate* was indebted; the last one charged that the administrator was indebted *as administrator*, and on demurrer, " The court was clearly of opinion that these counts could not be joined together; because the last was for a cause of action arising *after the intestate's death*, against the administrator personally, and warranted a different judgment from the former counts." It was a misjoinder of causes of action, requiring different judgments.

After a testator's death, the executor often contracts debts " as executor," and pays them out of the estate; as for funeral expenses, cartage and storage of testator's goods, for care and sustenance of his stock until a sale, for inventory, appraisement and vendue expenses, fees to officers, and the like; but if he has to be sued for these debts of *his own contracting*, the judgments will be not against his testator, but against him personally *de bonis propriis*.

Plain as the difference appears between a debt contracted *by the testator*, and one contracted after his death, *by the executor*, as executor, the case before us .is of a middle class, that seems new and never yet adjudged at law. A man gives a bond, with another person in it, as his surety, and dies. The surety after his death, has to pay the money. I think he may sue the executor for money paid to his use *as executor*, and recover judgment *de bonis testatoris;* and for these reasons. 1. It was the duty of the executor to pay the bond as a debt of the testator. 2. If the surety has to sue the executor *personally*, and he prove insolvent, the surety will lose the money, though there is plenty of the testator's estate to pay it. 3. It is a debt that arises out of the tes-

tator's *own act in his life time;* for a person asking another to be his surety, impliedly promises that if the surety has to pay the money, he the principal will reimburse him. It is a promise on contingency, and though the contingency happen after the testator's death, the money is paid in pursuance of an implied contract with the testator himself; and when the facts so appear on the face of the count, and it charges that in consideration thereof, the executor promised *as executor* to pay, &c. it may well warrant a judgment *de bonis testatoris.* A personal promise of an executor to pay a debt of the testator, will warrant a judgment of this kind; as where an executor promised *as executor* to pay a sum of money found due and owing *from his testator,* to the plaintiff, on an *insimul computasset. Secar* v. *Atkinson,* 1 *Hen. Bl.* 102. The point of a surety paying a bond after the death of the principal, was incidentally argued by the court, in *Ashby* v. *Ashby, exr.* 7 *Bar. & Creswell,* 444, from 14 *Eng. Com. Law Rep.* 77, and the *obiter* opinion of all the judges seems to have been that such surety might have an action on the executor's personal promise " as executor," and that the judgment thereon would be *de bonis testatoris;* and I think it was a sound opinion. Therefore the same judgment may be given on all the counts in this declaration; there is no misjoinder of causes of action, judgment may be given against the estate of the testator, on each of them, and the demurrer cannot be maintained.

WHITE and DAYTON, Justices, concurred.

NEVIUS, J. The declaration contains seven counts, the last two of which, it becomes necessary here to notice, as the questions have arisen on a general demurrer to these counts, to which the plaintiff has filed his joinder. As these counts differ materially from each other, I will consider them separately.

The 6th count states in substance that in the life time of the testator, in consideration that the plaintiff at the request of said testator and for his accommodation, and as his surety would sign and execute a certain bond, whereby the said testator and plaintiff bound themselves to one Henry Allen, in the penal sum of $2000, conditioned for the payment of $1000 with interest (of which said sum of $1000 the said testator received $300) and in

Cawley, Ex'r of Reeve, v. Reeve.

consideration thereof, undertook and promised the said plaintiff to indemnify him from all damage by reason of his executing said bond, as surety for the said sum of $300, and that he would repay the said sum of $300 to the said Henry Allen, with interest—and that he did sign and execute said bond as surety for the said testator, for 300 dollars, which was delivered to Henry Allen; and the testator did receive the 300 dollars; and although the said bond has been long due and payable, yet neither the testator in his life time, nor the defendant as his executor, paid the said sum; by means whereof, the plaintiff as surety and joint obligor, after the death of the testator, was obliged to pay, and did pay the whole sum of 300 dollars, with interest, to the use of the defendant as executor as aforesaid; whereof he had notice, and in consideration whereof, he promised the said plaintiff, to pay him, the said sum of 300 dollars.

This count shews a claim in behalf of the plaintiff against the estate of the testator, for which the executor is liable in his representative character; and if sustained by evidence must entitle him to a judgment against the defendant, *de bonis testatoris*. From this statement of facts, no one can deny that the plaintiff has cause of action, and that that cause of action exists against the testator's estate; and it would be difficult indeed, if not impossible to state it in a more legal manner, or more consistent with the fact, and more conformable with the rules and forms of pleading. The foundation of the claim, is in the testator's own contract to indemnify and save the plaintiff harmless from all payment and damages arising from the signing of the bond. These damages accrued after his death, but by reason of his own request and engagement, and in consideration of which, the defendant as his executor, either expressly promised to pay, or the law raises an implied assumpsit on his part, to pay. If he, as executor, is legally bound to pay this amount, the plaintiff has properly charged that it was paid by him to the defendant's use as executor. The defendant may avail himself of his representative plea of no assets, and the judgment must necessarily be against him in that character precisely in the same way as it would have been if the plaintiff had paid this money in the testator's life time. I can perceive no legal objection to this count, nor any reason why the plaintiff should not be entitled to a recovery under it.

Cawley, Ex'r of Reeve, v. Reeve.

The seventh and last count alleges that the defendant, as executor, was indebted, &c. for so much money before that time paid to his use as executor, &c. in consideration whereof, he afterwards promised to pay when as executor, he should be requested ; yet as executor, he disregarded his promise and neglected and refused, &c.   This count does not state the precise cause of action, yet the claim is distinctly charged against the defendant in his representative character.   He was indebted as executor, for money paid for him as executor, and as such executor, and in that capacity, and on account of the liability of the estate he represented, he promised to pay.   If then a case can be conceived where a payment could be legally made for an executor as such, and which he in his representative capacity would be bound to repay, this count is good, and his plea of no assets, would be a good plea, and the judgment legally *de bonis testatoris*.   It cannot be denied that numerous cases may exist, where the law would make an executor liable for such payment, on an implied promise ; and the case set forth in the 6th count, is one. I am of opinion that this count is also good ; and that there is no misjoinder.   In arriving at this conclusion, it is not necessary to impugn any of the decisions that have been cited in the argument.   In the case of *Sibbit* v. *Lloyd*, 6 *Hal.* 163, the first count alleged that the defendant's administrators were indebted for money paid and the defendant's administrators promised.   And the second count was for moneys had and received by them, wherefore as administrators, they were indebted, and that they promised to pay, &c.   The term administrators, as used in the first count, is clearly a *descriptio personæ*, and the second count has been frequently adjudged bad, for upon such a count, the judgment must be *de bonis propriis*—2 *Saun.* 117, *note*—and numerous other cases.

Let the demurrer be overruled.

*Demurrer overruled, with costs.*